UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
**DAHMEEK McDONALD**,
                              Plaintiff,

            -against-                                                      **COMPLAINT and**
                                                                          **JURY DEMAND**

**THE CITY OF TROY and JARROD ILER,**
                              Defendants.                                  Case No. 1:18-CV-1327 (DNH/CFH)
-------------------------------------------------------- ------------X

            Plaintiff, Dahmeek McDonald, by his attorneys, Law Office of Mark S. Mishler, P.C.,

states as his Complaint:

### INTRODUCTION

1.        On August 15, 2017, on-duty Troy Police Officer Jarrod Iler ("Iler") fired multiple shots

from his department issued firearm directly at Dahmeek McDonald without any legal

justification, privilege, or lawful basis. Fortunately, Mr. McDonald survived this police shooting,

although he suffered serious injuries and trauma.

2.        By this lawsuit, Mr. McDonald seeks to vindicate his rights, to obtain compensation

for the violation of his rights and the harm caused to him by defendants, and to hold  Iler and the

City of Troy ("City") accountable for their egregious and unlawful actions.

3.        Iler subjected Mr. McDonald to excessive, unreasonable, racist, and deadly force in

violation of the 4th and 14th Amendments to the U.S. Constitution, international human rights

law, and New York state law.

4.        In addition, the violation of Mr. McDonald's rights was caused by negligence of the

City and by its policies and practices which condoned  and covered up incidents and patterns of

unlawful uses of force by Troy police officers, prior to August 15, 2017, thereby directly and

foreseeably leading to Iler's unconstitutional and unlawful actions on August 15, 2017.

1

**JURISDICTION and VENUE**

5.      This lawsuit arises under the United States Constitution, international human rights

law, the New York State Constitution, and the common law of the State of New York.

6.      This lawsuit is brought pursuant to Title 42 U.S.C. § 1983 as well as under the

Constitution and laws of the State of New York.

7.      Subject matter jurisdiction of this lawsuit is based on Title 28 U.S.C. §§ 1331 (federal

question), 1343(3) (equal rights), and 1367(a) (supplemental jurisdiction over state-law claims).

8.      All of the events complained of occurred within the Northern District of New

York. Defendant City of Troy is located within the Northern District of New York  and, on

information and belief, all of the defendants reside within New York State. Venue, therefore, is

proper within the Northern District of New York pursuant to 28 U.S.C. § 1391(b)(1) and (2).

9.      In regard to Mr. McDonald's claims based on state law, he served a Notice of Claim on

the City of Troy on or about October 4, 2017, a date within 90 days of the accrual of his claims.

10.     Mr. McDonald remains ready and willing to participate in a properly noticed and

arranged examination pursuant to NY General Municipal Law 50-h.

11.     More than thirty days have passed since the Notice of Claim was served and the

claims herein have not been settled or adjusted.


**PARTIES**

12.     Plaintiff Dahmeek McDonald is a citizen of the United States. At the time of the events

described in this Complaint, Mr. McDonald was 22 years old and lived in Troy, New York. Mr.

McDonald is African American.

13.     Defendant City of Troy ("City") is a municipal corporation formed under and pursuant to the laws of the State of New York, with its principal place of business being Troy, New York. Defendant City is the employer of defendant Iler. Defendant City has oversight over the hiring, training, supervision, discipline, management, policies, and other aspects of the functioning of the Troy Police Department. At all times relevant to this Complaint, defendant City was acting under color of state law.

14.     Defendant Jarrod Iler ("Iler") was, at all times relevant to this Complaint, employed as a police officer by and for defendant City, was on-duty as a police officer, was acting under color of state law, was acting within the scope of his employment and his duties and in furtherance of his employer's interests. Defendant Iler is a white person.


## FACTS

A.      Background.

15.     The events that form the basis of this case took place on August 15, 2017, at approximately 6:30 pm, on 8th Street, Troy, New York, near the intersection of 8th Street and Rensselaer Street.

16.     At that time and place, Mr. McDonald was inside of a white 2010 Honda CRV that was parked on the East side of 8th Street. He was sitting in the driver's seat.

17.     At that time, Mr. McDonald was on parole as a result of a conviction and sentence imposed by Albany County Court in 2014.

3

18.     Several months earlier, in or about April of 2017, Mr. McDonald was administratively

charged by the New York State Department of Corrections and Community Supervision with

violating certain conditions of his parole and a warrant was issued for him based on the

administrative allegations of parole violations.

19.     The warrant for the alleged violations of parole was in effect on August 15, 2017.


B.      Events of August 15, 2017.

20.     On information and belief, on August 15, 2017, at approximately 6:30 pm,

Iler obtained information leading him to believe that Mr. McDonald was on 8th Street near the

intersection with Rensselaer Street.

21.     On information and belief, Iler believed at that time that a warrant had been issued

and remained in effect for the arrest of Mr. McDonald for the alleged violations of his conditions

of parole.

22.     At that time, Mr. McDonald was aware that he was wanted by the parole authorities for

allegedly having violated certain conditions of his parole,.

23.     On information and belief, upon learning that Mr. McDonald might be at the 8th

Street location, Iler informed other Troy Police Officers of his belief that Mr. McDonald was on

8th Street near the intersection with Rensselaer Street and Iler then went to that location.

24.     Iler was operating a marked Troy Police Department vehicle at that time.

25.     Upon Iler's arrival at said location, he observed a white 2010 Honda CRV parked on the

East side of 8th Street, facing South, parked at the curb.

4

26.     On information and belief, upon his arrival at the 8th Street location or soon thereafter, Iler concluded that Mr. McDonald was in the Honda CRV.

27.     On information and belief, at that time Iler also believed that there was at least one other person in the Honda CRV.

28.     At the time Iler arrived at the 8th Street location, there were many other people present, on the sidewalk and in and around the homes on the East side of 8th Street on what was at the time of Iler's arrival a nice Summer evening.

29.     Iler was aware of the presence of many other people in the vicinity of the Honda CRV.

30.     Iler drove his marked police vehicle so that the rear of his vehicle was approximately one car-length in front of the parked Honda CRV. Iler parked his vehicle so that the front driver's side corner of the vehicle was closest to the curb and the rest of his vehicle jutted out into the street at approximately a 45 degree angle.

31.     Iler got out of his police vehicle and stood by his vehicle, facing the front of the Honda CRV, at a distance of approximately one car-length from the Honda CRV.

32.     Iler pulled out his Troy Police Department issued firearm immediately upon stepping out of his police vehicle.

33.     Iler intentionally pointed his firearm directly at Mr. McDonald, who was in the driver's seat of the Honda CRV.

34.     Mr. McDonald saw Iler and saw that Iler was pointing his gun directly at Mr. McDonald and was in fear that Iler was about to shoot him.

35.     When Iler stepped out of his police vehicle and pointed his gun at Mr. McDonald, Mr. McDonald moved the Honda CRV backwards approximately several feet.

36.     Mr. McDonald's action in moving the Honda CRV backwards several feet did not in any manner cause or present any risk of harm or injury to Iler or to any other person.

37.     Mr. McDonald then turned the steering wheel all or most of the way, sharply, to the right and put the Honda CRV in drive.

38.     By turning the steering wheel sharply to the right, and starting to drive forward, Mr. McDonald's intention was to drive past Iler and Iler's vehicle and to drive away, thereby avoiding being taken into custody.

39.     Mr. McDonald's actions in turning the steering wheel sharply to the right, and starting to drive forward and past defendant Iler did not in any manner cause or present any risk of harm or injury to  Iler  or to any other person.

40.     Mr. McDonald never drove the Honda CRV towards Iler.

41.     Mr. McDonald never drove the Honda CRV towards any other person.

42.     Mr. McDonald never intended to drive the Honda CRV towards Iler or any other person.

43.     Even if Iler believed or claims to have believed that Mr. McDonald was driving towards him - which he had no factual basis to believe based on the angle of Mr. McDonald's path, which was such that Mr. McDonald was driving past Iler to Iler's left - Iler could have easily protected himself by moving to the right or otherwise out of what he claims to have believed the path of the Honda was.

44.     At some point - either as Mr. McDonald briefly had moved the Honda CRV backwards or as Mr. McDonald had started to drive forward and sharply to the right - Iler engaged in the use of deadly physical force against Mr. McDonald by intentionally and repeatedly shooting directly at Mr. McDonald with his firearm.

6

45.     At the time Iler used deadly physical force against Mr. McDonald, Mr. McDonald was not armed with any firearm or deadly weapon.

46.     At the time Iler used deadly physical force against Mr. McDonald, Iler did not believe and could not reasonably have believed that Mr. McDonald was armed with a firearm or a deadly weapon.

47.     Iler's use of deadly physical force against Mr. McDonald constituted a "seizure" of Mr. McDonald under the 4th and 14th Amendments to the US Constitution.

48.     Iler fired at least four shots directly at Mr. McDonald.

49.     Iler's fired the shots rapidly.

50.     Iler's shots smashed through the windshield and driver's side window of the Honda CRV.

51.     Iler's intention was to kill Mr. McDonald.

52.     Iler's actions could have killed Mr. McDonald.

53.     At least two of the shots fired by Iler hit Mr. McDonald.

54.     One shot fired by Iler hit Mr. McDonald in the head, on the left side.

55.     Another shot fired by Iler hit Mr. McDonald in his left arm.

56.     Mr. McDonald knew Iler shot at him.

57.     Mr. McDonald knew he had been hit by at least one shot.

58.     Mr. McDonald was in extreme pain.

59.     Mr. McDonald believed he was about to die.

60.     Mr. McDonald was covered in blood from the wounds caused by Iler's shots.

61.     Mr. McDonald got out of the Honda CRV.

62.     Mr. McDonald complied with Iler's order to get on the ground.

63.     Iler then placed Mr. McDonald in handcuffs on the ground.

C.     Iler's actions were unlawful.

64.     In order to have been lawful, Iler's use of deadly physical force against Mr. McDonald on

August 15, 2017, must have been "reasonable" as required by the 4th and 14th Amendments to the

U.S. Constitution (*Graham v. Connor*, 490 US 386 [1989], *Tennessee v. Garner*, 471 US 1

[1985]).

65.     In addition, in order to have been lawful, Iler's use of deadly physical force against Mr.

McDonald on August 15, 2017, would also have had to have met the requirements of NY Penal

Law Article 35 which defines the defense of justification under NY law and which narrowly

defines the circumstances under which a police officer may use deadly physical force,

specifically providing, as relevant here, that:

> Penal Law §35.05, Justification, generally.
>
> Unless otherwise limited by the ensuing provisions of this article
> defining justifiable use of physical force, conduct which would
> otherwise constitute an offense is justifiable and not criminal when:
>
> 1. Such conduct is required or authorized by law or by a judicial
> decree, or is performed by a public servant in the reasonable
> exercise of his official powers, duties or functions; or
>
> 2. Such conduct is necessary as an emergency measure to avoid an
> imminent public or private injury which is about to occur by reason
> of a situation occasioned or developed through no fault of the
> actor, and which is of such gravity that, according to ordinary
> standards of intelligence and morality, the desirability and urgency
> of avoiding such injury clearly outweigh the desirability of
> avoiding the injury sought to be prevented by the statute defining
> the offense in issue.
> ***

8

Penal Law § 35.15, Justification; use of physical force in defense of a person

1. A person may, subject to the provisions of subdivision two, use physical force upon another person when and to the extent he or she reasonably believes such to be necessary to defend himself, herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful physical force by such other person, unless:

> (a) The latter's conduct was provoked by the actor with intent to cause physical injury to another person; or
>
> (b) The actor was the initial aggressor; except that in such case the use of physical force is nevertheless justifiable if the actor has withdrawn from the encounter and effectively communicated such withdrawal to such other person but the latter persists in continuing the incident by the use or threatened imminent use of unlawful physical force; or
>
> (c) The physical force involved is the product of a combat by agreement not specifically authorized by law.

2. A person may not use deadly physical force upon another person under circumstances specified in subdivision one unless:

> (a) The actor reasonably believes that such other person is using or about to use deadly physical force. Even in such case, however, the actor may not use deadly physical force if he or she knows that with complete personal safety, to oneself and others he or she may avoid the necessity of so doing by retreating; except that the actor is under no duty to retreat if he or she is:
>
> > (i) in his or her dwelling and not the initial aggressor; or

(ii) a police officer or peace officer
or a person assisting a police officer
or a peace officer at the latter's
direction, acting pursuant to section
35.30; or

(b) He or she reasonably believes that such other
person is committing or attempting to commit a
kidnapping, forcible rape, forcible criminal sexual
act or robbery; or

(c) He or she reasonably believes that such other
person is committing or attempting to commit a
burglary, and the circumstances are such that the use
of deadly physical force is authorized by
subdivision three of section 35.20.

\*\*\*

Penal Law §35.30 Justification; use of physical force in making an
arrest or in preventing an escape

1. A police officer or a peace officer, in the course of effecting or
attempting to effect an arrest, or of preventing or attempting to
prevent the escape from custody, of a person whom he or she
reasonably believes to have committed an offense, may use
physical force when and to the extent he or she reasonably believes
such to be necessary to effect the arrest, or to prevent the escape
from custody, or in self-defense or to defend a third person from
what he or she reasonably believes to be the use or imminent use of
physical force; except that deadly physical force may be used for
such purposes only when he or she reasonably believes that:

(a) The offense committed by such person was:

(i) a felony or an attempt to commit a
felony involving the use or attempted
use or threatened imminent use of
physical force against a person; or

10

(ii) kidnapping, arson, escape in the
first degree, burglary in the first
degree or any attempt to commit
such a crime; or

(b) The offense committed or attempted by such
person was a felony and that, in the course of
resisting arrest therefor or attempting to escape from
custody, such person is armed with a firearm or
deadly weapon; or

(c) Regardless of the particular offense which is the
subject of the arrest or attempted escape, the use of
deadly physical force is necessary to defend the
police officer or peace officer or another person
from what the officer reasonably believes to be the
use or imminent use of deadly physical force.

2. The fact that a police officer or a peace officer is justified in
using deadly physical force under circumstances prescribed in
paragraphs (a) and (b) of subdivision one does not constitute
justification for reckless conduct by such police officer or peace
officer amounting to an offense against or with respect to innocent
persons whom he or she is not seeking to arrest or retain in
custody.

\*\*\*

66.     In addition, in order to have been lawful, Iler's use of deadly physical force against Mr.

McDonald on August 15, 2017, would also have had to have met the "equal protection of the

law" requirement of the 14th Amendment to the US Constitution, that is, Iler' s use of deadly

physical force could not have been motivated by racial discrimination against Mr. McDonald

because of his race and color.

67.     In addition, in order to have been lawful, Iler's use of deadly physical force against Mr.

McDonald on August 15, 2017, would also have had to have met the requirements of

international human rights law, including the United Nations Code of Conduct for Law

Enforcement Officials, the United Nations Basic Principles on the Use of Force and Firearms by

Law Enforcement Officials, the Universal Declaration of Human Rights, and the International

Covenant of Civil and Political Rights, which, among other things, provide that the use of deadly

physical force by a law enforcement officer is only permissible as a last resort and only when it is

strictly unavoidable in order to protect life.

68.     Iler's use of deadly physical force against Mr. McDonald did not meet any of the above-

referenced requirements.

69.     First, Iler's use of deadly physical force against Mr. McDonald was not "reasonable"

under the totality of circumstances, as required by the 4th and 14th Amendments to the US

Constitution.

70.     Second, Iler's use of deadly physical force against Mr. McDonald was not "justified" as

defined by NY Penal Law Article 35.

  A.     In regard to the requirements of NY Penal Law §35.05 (1), Iler's use of
         deadly physical force against Mr. McDonald was neither required nor
         authorized by law or by a judicial decree, nor was it performed by a public
         servant in the reasonable exercise of his official powers, duties or
         functions.

  B.     In regard to the requirements of NY Penal Law §35.05 (2), Iler's
         use of deadly physical force against Mr. McDonald was not
         necessary as an emergency measure to avoid imminent public or
         private injury under circumstances where injury was of such
         gravity that, according to ordinary standards of intelligence and
         morality, the desirability of avoiding such injury justified the use of
         deadly physical force.

C.     In regard to the requirements of NY Penal Law §35.15(2)(a), when Iler used deadly physical force against Mr. McDonald, Mr. McDonald, *in fact*, had not used and was not using, nor was he about to use deadly physical force.

D.     Further, in regard to the requirements of NY Penal Law §35.15(2)(a), when Iler used deadly physical force against Mr. McDonald, *Iler did not believe and could not reasonably have believed* that Mr. McDonald had used, was using or was about to use deadly physical force. In addition, even if that were the case, it would have been possible under the circumstances for Iler to retreat in complete personal safety.

E.     In regard to the requirements of NY Penal Law §35.30(1), when Iler used deadly physical force against Mr. McDonald, Mr. McDonald, *in fact*, had not engaged in any actions that could have constituted the use or imminent use of deadly physical force and neither Iler nor any other person was in imminent danger of death or serious bodily harm or of any injury as a result of Mr. McDonald's actions.

F.     Further, in regard to the requirements of NY Penal Law §35.30(1), when Iler used deadly physical force against Mr. McDonald, *Iler did not believe and could not have reasonably believed* that he or any other person was in imminent danger of death or serious bodily harm or of any injury as a result of Mr. McDonald's actions.

G.     In regard to the requirements of NY Penal Law §35.30(1)(a)(i), when Iler used deadly physical force against Mr. McDonald, Mr. McDonald, *in fact*, had not committed and was not committing a felony involving the use or attempted use or threatened imminent use of physical force against a person and had neither attempted nor was attempting to commit such a felony.

H.     Further, in regard to the requirements of NY Penal Law §35.30(1)(a)(i), when Iler used deadly physical force against Mr. McDonald, *Iler did not believe and could not reasonably have believed* that Mr. McDonald had committed or was committing a felony involving the use or attempted use or threatened imminent use of physical force against a person or that Mr. McDonald had attempted or was attempting to commit such a felony.

I.     In regard to the requirements of NY Penal Law §35.30(1)(a)(ii), when Iler used deadly physical force against Mr. McDonald, Mr. McDonald, *in fact*, had not committed nor was he committing the offense of kidnapping, the offense of arson, the offense of escape in the first degree, or the offense of burglary in the first degree, and Mr. McDonald had neither attempted nor was he attempting to commit any of said offenses.

J.     Further, in regard to the requirements of NY Penal Law §35.30(1)(a)(ii), when Iler used deadly physical force against Mr. McDonald, *Iler did not believe and could not reasonably have believed* that Mr. McDonald had committed or was committing the offense of kidnapping, the offense of arson, the offense of escape in the first degree, or the offense of burglary in the first degree, or that Mr. McDonald had attempted or was attempting to commit any of said offenses.

K.     In regard to the requirements of NY Penal Law §35.30(1)(b), when Iler used deadly physical force against Mr. McDonald, Mr. McDonald, *in fact*, was not armed with a firearm or a deadly weapon in the course of resisting arrest or attempting to escape from custody in regard to having committed a felony.

L.     Further, in regard to the requirements of NY Penal Law §35.30(1)(b), when Iler used deadly physical force against Mr. McDonald, *Iler did not believe and could not reasonably have believed* that Mr. McDonald was armed with a firearm or a deadly weapon in the course of resisting arrest or attempting to escape from custody in regard to having committed a felony.

71.     <u>Third</u>, Iler's use of deadly physical force against Mr. McDonald violated the "equal protection of the law" provision of the 14th Amendment to the US Constitution as Iler would not have engaged in his use of deadly force against Mr. McDonald as described above had Mr. McDonald been a white person and not an African American person and Iler's actions were, at least in part, motivated by Mr. McDonald's race and color.

72.     <u>Fourth</u>, Iler's use of deadly physical force against Mr. McDonald violated principles of international human rights law as, among other things, it was not strictly unavoidable in order to protect life.

14

73.     In addition to the above, Iler's use of deadly physical force against Mr. McDonald was excessive.

74.     In addition, Iler's use of deadly physical force against Mr. McDonald was carried out in such a fashion that it demonstrated a complete lack of regard for Mr. McDonald's rights to be free from the infliction of unnecessary and unlawful bodily harm or threats of such harm.

75.     In addition, Iler engaged in his use of deadly physical force against Mr. McDonald without the due care and diligence which a prudent and reasonable police officer would have displayed.

76.     In addition, Iler engaged in his use of deadly physical force against Mr. McDonald willfully, maliciously and with such reckless disregard for the consequences as to reveal a conscious indifference to the clear risk of death or serious physical harm to Mr. McDonald.

77.     In addition, Iler engaged in his use of deadly physical force against Mr. McDonald recklessly and with reckless disregard for the possibility that his actions might cause death or serious harm to other individuals who were in or around the Honda CRV when Iler started shooting.


D.     Iler's actions violated clearly established constitutional rights.

78.     Iler's actions constituted a violation of Mr. McDonald's clearly established constitutionally protected rights, including Mr. McDonald's rights to be free from unreasonable and unlawful seizures by law enforcement officers, the right to be free from unreasonable uses of force by law enforcement officers, and the right to liberty, due process, and equal protection of the law, all of which a reasonable police officer would have known.

79.     Therefore, Iler is not entitled to qualified immunity.

E.      Mr. McDonald's injuries.

80.     As a direct result of Iler's use of deadly physical force against Mr. McDonald, Mr.
McDonald suffered significant physical injuries, including injuries caused by one bullet fired by
Iler hitting Mr. McDonald in the left side of his head and another bullet fired by Iler hitting Mr.
McDonald in his left arm, requiring hospital admission, medical care and permanent injuries.

81.     As a direct result of Iler's use of deadly physical force against Mr. McDonald, Mr.
McDonald suffered significant pain and suffering.

82.     As a direct result of Iler's use of deadly physical force against Mr. McDonald, Mr.
McDonald suffered significant psychological and emotional injuries.

F.      Liability of the City of Troy.

        1.      Negligence

83.     Mr. McDonald's injuries also resulted directly and proximately from the negligent failure
on the part of the City prior to August 15, 2017, to comply with its duty and standard of care,
specifically its duty to properly screen, train, supervise, and discipline its police officers,
including Iler, including on such matters as the proper and legal grounds and/or procedures for:
(1) the legal basis by which an officer may lawfully use force against a person, (2) the legal
grounds by which an officer may lawfully use deadly physical force against a person, (3) the right
of individuals to be free from the improper, excessive, unreasonable or unlawful use of force, (4)
the right of individuals to be free from racial discrimination, and other matters.

84.     It was foreseeable that said negligent failures on the part of the City would result in the

deprivation of rights of individuals with whom the City's police officers, including Iler, interact

in the performance of their duties.

85.     The City's negligence did, in fact, directly and proximately lead to Mr. McDonald's

injuries as had Iler and other Troy police officers been properly screened, trained, supervised,

and disciplined prior to August 15, 2017, Iler would never have engaged in his unlawful use of

deadly physical force against Mr. McDonald.

> 2.     Liability under *Monell v. Dept. of Social Services of City of New York*, 436 US
> 658 1978) - failure to train and supervise.

86.     The failures on the part of the City to properly screen, train, supervise, and discipline

its police officers, including Iler, including on such matters as the proper and legal grounds

and/or procedures for: (1) the legal basis by which an officer may lawfully use force against a

person, (2) the legal grounds by which an officer may lawfully use deadly physical force against a

person, (3) the right of individuals to be free from the improper, excessive, unreasonable or

unlawful use of force, (4) the right of individuals to be free from racial discrimination, and other

matters, also, or in the alternative, constituted an unconstitutional policy and practice on the part

of the City.

87.     In light of the duties assigned to its police officers and the provision to its police officers

of firearms, the need for more or different screening, training supervision, and discipline in these

areas was so obvious and the inadequacy so likely to result in the violation of constitutional

rights, that the City was deliberately indifferent to the need.

88.     The City's failures in this regard constituted official City policy.

3.    *Monell* liability - prior incidents.

89.    On information and belief, the City has a history of incidents in which officers in the Troy Police Department have used excessive and unreasonable force against individuals in the City of Troy and such incidents have rarely if ever resulted in the imposition of discipline on the officer(s) who engaged in such conduct.

90.    On information and belief, Iler knew prior to August 15, 2017, of the history referenced in paragraph 89.

91.    On information and belief, in particular, the City has a history of incidents in which officers of the Troy Police Department have used excessive and unreasonable force against African Americans in the City of Troy and, again, such incidents have rarely if ever resulted in the imposition of discipline on the officer(s) who engaged in such conduct.

92.    On information and belief, Iler knew, prior to August 15, 2017, of the history referenced in paragraph 91.

93.    The history referenced in paragraphs 89 and 91 caused Troy police officers, including Iler, to believe that they could engage in acts of excessive and unreasonable force with impunity.

94.    Prior to August 15, 2017, the City was deliberately indifferent to the need to properly screen, train, supervise, and discipline its officers regarding the proper use of force and deadly force as, based on the history of incidents in the City of Troy, there was an obvious need for such screening, training, supervision, and discipline in order to avoid violations of individual's constitutional rights, such as occurred to Mr. McDonald on August 15, 2017.

95.      For example, less than one and one-half years before Iler unlawfully used deadly physical

force against Mr. McDonald, another Troy Police officer - Sergeant Randall French - unlawfully

used deadly physical force against Edson Thevenin on April 17, 2016, resulting in the death of

Mr. Thevenin. Mr. Thevenin was African American. Mr. Thevenin was in his car when Sgt.

French fired at least eight shots at him killing Mr. Thevenin. The Troy Police Department

engaged in a cover-up of the circumstances of Mr. Thevenin's death. The cover-up included

publicly asserting that Sgt. French had been "pinned" by Mr. Thevenin's car when he began

shooting and that the shooting was therefore justified. It was not true that Sgt. French had been

"pinned" and, prior to issuing that public statement,  the City was in possession of evidence

contradicting that version of events, including photographs it took of Mr. Thevenin's windshield

showing trajectory rods inserted in each of the eight bullet holes which established that Sgt.

French was not "pinned" when he started shooting. In addition, the City failed to interview two

key civilian eyewitnesses to Sgt. French's use of deadly physical force and failed to properly and

thoroughly interview a third civilian eyewitness who contradicted Sgt. French's false version of

the events. Sgt. French was never subjected to discipline by the City for his actions in killing Mr.

Thevenin.

96.      On information and belief, Iler - and all other members of the Troy Police Department -

were well aware prior to August 15, 2017, that the City had failed to engage in a proper

investigation of Sgt. French's use of deadly physical force against Mr. Thevenin and that Sgt.

French had not been subjected to any discipline by the City for his actions.

97.      On information and belief, the City never engaged in any training or educational efforts

with its police officers between the date Sgt. French killed Mr. Thevenin in April 2016 and the

19

date Iler used deadly physical force against Mr. McDonald in August 2017 in which officers were instructed as to what had gone wrong in the Thevenin incident or in the ways in which Sgt. French's actions had violated Mr. Thevenin's rights.

98.     The City's actions and lack of actions between the date of Mr. Thevenin's death and the date Iler shot at Mr. McDonald demonstrated deliberate indifference on the part of the City as to whether the constitutional rights of individuals, such as Mr. McDonald, would be violated by its officers by the unlawful use of deadly physical force.

99.     The City's cover-up and failure to impose discipline on Sgt. French for his actions in killing Mr. Thevenin sent a strong message to its officers, including Iler, that the unlawful use by police offices of deadly physical force could occur in Troy with impunity and without adverse consequences for any officer who engaged in such unlawful use of deadly physical force.

100.    The City's failures in the aftermath of Sgt. French's killing of Mr. Thevenin were specifically relevant to Iler's use of deadly physical force against Mr. McDonald as both incidents involved an officer unlawfully firing multiple shots directly at a person who was in a motor vehicle that was moving, or which was alleged by the officer to have been moving, and then falsely claiming that the shooting was justified.

101.    Therefore, a direct causal relationship exists between the City's failures in the aftermath of Sgt. French's killing of Mr. Thevenin and Iler's use of deadly physical force against Mr. McDonald less than one and one-half years later.

102.    The City's failures as described above constituted official City policy.

4.    *Monell* liability - City's unlawful and unconstitutional departmental policy regarding use of deadly force.

103.    On the date Iler used deadly physical force against Mr. McDonald, the City had an official written policy in place regarding the discharging of a firearm by a police officer at a moving vehicle which was unconstitutional and improper as it permitted officers to fire at a moving vehicle even there is no alleged danger to the officer other than what is allegedly caused by the movement of the vehicle and even if the officer had the possibility of moving or retreating and thereby avoiding the necessity of such use of deadly physical force.

104.    This policy, or essentially the same policy, was in place at the time Sgt. French killed Mr. Thevenin in April 2016 by shooting at a moving vehicle and had not substantively been modified between that date and the date Iler used deadly physical force against Mr. McDonald by shooting at a moving vehicle.

105.    On information and belief, most police departments prohibit officere from shooting into a moving vehicle unless there is an allegation that deadly physical force, other than the moving vehicle, is being used against the officer or another person. These policies properly and constitutionally expressly favor officers moving out of the way of an allegedly charging vehicle rather than standing their ground and firing into the vehicle.

106.    The City's unconstitutional written policy led directly to Iler's unconstitutional use of deadly physical force against Mr. McDonald on August 15, 2017, as the existence of this policy meant that Iler was trained in an unconstitutional policy and, further,  provided a basis for Iler to believe he could fire at Mr. McDonald with impunity as long as he falsely claimed that the vehicle was driving at him.

### FIRST CAUSE OF ACTION
**Defendant Iler  -   4th and 14th amendments - unreasonable use of force.**

107.     Paragraphs 1 through 106 are re-alleged as if fully set forth herein.

108.     Defendant Iler, acting under color of state law, intentionally violated Mr. McDonald's rights protected by the 4th and 14th amendments to the U.S. Constitution to be free from the unreasonable use by law enforcement officer of force and is liable to Mr. McDonald for the injuries caused by said actions.

### SECOND CAUSE OF ACTION
**Defendant Iler  -   14th amendment - equal protection**

109.     Paragraphs 1 through 106 are re-alleged as if fully set forth herein.

110.     Defendant Iler, acting under color of state law, intentionally violated Mr. McDonald's rights protected by the 14th amendment to the U.S. Constitution to equal protection of the laws and is liable to Mr. McDonald for the injuries caused by said actions.

### THIRD CAUSE OF ACTION
**Defendant City  -   Monell liability.**

111.     Paragraphs 1 through 106 are re-alleged as if fully set forth herein.

112.     Defendant City is liable to Mr. McDonald as the violations of Mr. McDonald's constitutionally protected rights were caused by policies, practices, customs of the City relating to the screening, training, supervision, and discipline of its police officers, by the patterns of violations of constitutional rights by its police officers, and by its unconstitutional policies including in regard to discharging a firearm at a moving vehicle, and is liable to Mr. McDonald for the injuries caused by said policies, practices, or customs of the City.

22

## FOURTH CAUSE OF ACTION
### Defendants Iler and City   -   Common law assault.

113.     Paragraphs 1 through 106 are re-alleged as if fully set forth herein.

114.     Defendant Iler intentionally placed Mr. McDonald in apprehension of imminent harmful or offensive conduct, thereby committing the common law tort of assault against Mr. McDonald and is liable to Mr. McDonald for the injuries caused by his actions.

115.     Defendant City is also liable for Iler's assault pursuant to the doctrine of *respondeat superior*.


## FIFTH CAUSE OF ACTION
### Defendants Iler and City   -   Common law battery.

116.     Paragraphs 1 through 106 are re-alleged as if fully set forth herein.

117.     Defendant Iler intentionally engaged in harmful, offensive, and unprivileged physical contact with Mr. McDonald, thereby committing the common law tort of battery against Mr. McDonald and is liable to plaintiff for the injuries caused by his actions.

118.     Defendant City is also liable for Iler's batteries pursuant to the doctrine of *respondeat superior*.


## FIFTH CAUSE OF ACTION
### Defendants Iler and City   -   Negligence.

119.     Paragraphs 1 through 106 are re-alleged as if fully set forth herein.

120.     Defendants negligently caused injuries to Mr. McDonald and are liable to him for said injuries.

WHEREFORE, Plaintiff respectfully demands compensatory damages in the amount of $1,000,000.00, punitive damages against defendant Iler in the amount of $1,000,000.00, the costs of this action, attorneys' fees pursuant to 42 USC §1988 and such other and further relief as the Court deems just and proper.

**Please take further notice that plaintiff hereby demands a jury trial.**

Dated: November 12, 2018.

Respectfully submitted,

Mark S. Mishler, Esq.
Bar roll # 102213
Law Office of Mark S. Mishler, P.C.
Attorneys for Plaintiff
750 Broadway
Albany, NY 12207
(518) 462-6753
(518) 432-7325 (Fax - not for service of papers)
mishlerlaw@gmail.com